W. Sam Hendricks v. Commissioner.
W. Hendricks v. Commissioner
Docket No. 17439.
United States Tax Court
1949 Tax Ct. Memo LEXIS 114; 8 T.C.M. (CCH) 699; T.C.M. (RIA) 49190; August 10, 1949
G. C. Thompson, Esq., RFD #1, Manchester, Ga., for the petitioner. Edward L. Potter, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The Commissioner determined a deficiency in petitioner's income tax for the year 1944 in the amount of $433.80. The only question involved is as to the correctness of the Commissioner's adjustments pertaining to items of income which were included in petitioner's 1944 income tax return. These adjustments are given in detail hereinafter. Findings of Fact Petitioner is now, and has *115 been for many years past, a farmer living near Manchester, Ga. He filed his return for the taxable year with the collector of internal revenue for the district of Georgia. The field examination of his 1944 return, which by agreement was attached as an exhibit to Exhibit A of the petition, shows in summary the following adjustments to petitioner's 1944 return: Reduction
Addition
Auditor
Return
Audit
of income
to income
Increased income from sales
$27,651.30
$28,399.08
$ 747.78
Decreased claimed depreciation deduction
12,136.24
920.69
515.55
Decreased claimed deduction for medical
expenses
311.69
181.81
129.88
Rejected claimed loss carry over from 1942
and 1943
1,863.48
1,763.48
$3,156.69
Increased expenses claimed
22,075.20
22,504.69
$429.49
$2,727.20
The petitioner in his brief accepted the reduction in depreciation above set forth and also the increased allowance in expenditures. He contests the remaining items. Petitioner filed a Treasury Department Form 1040 for the calendar year 1944 which was prepared by one G. C. Thompson but was not signed by petitioner. He kept no books or records but *116 preserved his invoices of sales and otherwise relied upon his bank statements. His return showed receipts and deductions as follows: Sales of peaches
$26,200.50
Sales of peppers
1,450.80
Total
$27,651.30
Expenses of operation
$22,075.20
Depreciation
1,436.24
Loss carry over from 1942
and 1943
1,763.48
Total
25,274.92
Gross profit
2,376.38
Other deductions not involved herein
776.69
Taxable income
1,599.69
When the field examiner attempted to audit the above return he found invoices of sales of peaches showing sales of $26,948.28. There were no invoices for the sales of peppers but he accepted petitioner's statement of $1,450.80, making a total of $28,399.08. In checking over petitioner's claimed disbursements for expenses the field examiner increased those items by $429.49. These two adjustments in petitioner's taxable income are the basis for the Commissioner's disallowance of medical expenses. Petitioner reported medical and dental expenses of $430.51. He deducted five per cent of the adjusted gross income which he had reported and which percentage amounted to $118.81, leaving a balance of $311.69 which he claimed as a deduction *117 for medical expenses. Inasmuch as the Commissioner adjusted the adjusted gross income to $4,973.70, five per cent of this amount is $248.70, leaving an excess of $181.81 as an allowable deduction for medical expenses. The petitioner's bank balances at the end of the calendar years 1943, 1944 and 1945, were as follows: 1943
$ 3,073.95
1944
12,972.04
1945
10,251.65
Petitioner's wife made no return but she had a savings account representing an undisclosed inheritance which she had received. The petitioner had a savings account amounting to $1,500 to $2,000 which drew interest at three per cent. No interest on either of these accounts was listed as income in petitioner's 1944 return. Petitioner's returns for 1942 and 1943 showed net operating losses as follows: 1942
$ 650.51
1943
1,187.97 In his 1944 return he sought to carry these losses forward to reduce his taxable income for that year. These losses were disallowed by the Commissioner as being unsubstantiated. Petitioner's 1942 return showed receipts of $9,032.55, whereas his bank deposits amounted to $12,581.30. In 1943 petitioner's return shows receipts of $6,512.27. His bank statement *118 shows deposits of $8,838.62. Opinion The petitioner herein attempted to explain the discrepancies between his reported sales in his various income tax returns and the amount of money he deposited in his bank in each of the years involved by the fact that he had made loans at the bank or that he had lent money to his children which was repaid to him. However, the bank records were not produced to show that any loans were made and his children did not testify. He admitted that during this time he had sold no capital assets nor had he received any gifts or bequests which would account for the receipt of any tax exempt income and he made no plausible explanation of the very great increase in the bank balance from 1943 to 1944 which was substantially maintained in 1945. He also stated that a contributing factor to this discrepancy might have been that he included in some of his carload shipments of peaches some of his neighbors' crops for which he was paid and for which he subsequently remitted to the neighbor. The difficulty with this explanation is that the receipts for the peaches would have been counterbalanced by disbursements to the neighbor and the net result on the bank balance *119 would have been zero. Furthermore, petitioner admitted on cross-examination that while he borrowed peaches from his neighbors to complete carload shipments, he also lent peaches to his neighbors for the same purpose and he was unable to give the amounts in either case. Petitioner relies heavily upon section 29.54-1 of Regulations 111. [1] That regulation obviously merely releases the farmer from the obligation of maintaining customary account books, including inventories, etc., such as would be maintained by a taxpayer engaged in manufacturing or trade. However, the regulations pertaining to income of farmers obviously requires that reasonably accurate accounts shall be kept. Section 29.22(a)-7 provides that the farmer in making his reports shall include the amount in cash or value of all sales of livestock and produce, the profits therefrom, and the gross income from all other sources. It specifies that the profits shall be determined by deducting the cost price from the sale price, less depreciation under certain circumstances. Section 29.41-1 provides that if the farmer's method of "accounting" clearly reflects his income, it is to be followed but that if that method of accounting *120 does not reflect the income, the Commissioner shall prescribe the method of accounting to be used. The regulations do not relieve the farmer, when his income tax return is examined and adjustments recommended, from furnishing sufficient data to enable the Commissioner and the Tax Court to determine the taxpayer's taxable income with reasonable certainty. In the case at bar the petitioner says that in February of 1946 he had an automobile stolen and that at least a part of his "records" were in the automobile and were not recovered. However, *121 he admitted at the trial that his "records" as to sales, income and expenditures were taken from his sales invoices and bank statements. The sales invoices were not lost in the theft of the car, duplicate bank statements were in evidence and the examiner accepted the statement of the petitioner as to the cash payments for labor. Petitioner's only testimony as to his loss carry-over from 1942 and 1943 was that he had made the returns in these years from his records. He made some indefinite, unsubstantiated statements about withdrawals from his savings account and depositing same in his bank, about bank loans and loans to his family, but none of these statements were substantiated in any manner and were not sufficient to overcome the presumption of the correctness of the Commissioner's finding, especially in view of the discrepancies between the volume of sales as returned by the petitioner and the amount of his bank deposits. From an examination of the whole record in this case we are unable to find where the petitioner herein has introduced any creditable, substantial testimony which would give him a preponderance of the evidence in such a way as to overcome the presumption of *122 correctness of the Commissioner's finding. Decision will be entered for the respondent. Footnotes
1. Sec. 29.54-1. Records and Income Tax Forms. - Every person subject to the tax, except persons whose gross income (1) consists solely of salary, wage, or similar compensation for personal services rendered, or (2) arises solely from the business of growing and selling products of the soil, shall, for the purpose of enabling the Commissioner to determine the correct amount of income subject to the tax, keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of the gross income and the deductions, credits, and other matters required to be shown in any return under chapter 1. * * *↩